1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GTE MOBILNET OF CALIFORNIA
LIMITED PARTNERSHIP,

        Plaintiff,

    v.

CITY OF BERKELEY,

        Defendant.

Case No.  20-cv-05460-DMR

**ORDER ON MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Re: Dkt. No. 40

Plaintiff GTE Mobilnet of California ("Verizon") filed this action for declaratory judgment under the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7) against Defendant City of Berkeley ("Berkeley"), alleging that Berkeley unlawfully denied Verizon's application to construct a personal wireless service facility in Berkeley, California.  Intervenor-Defendants Berryman Reservoir Neighbors ("BRN") now move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Verizon's First Amended and Supplemental Complaint ("FASC").  [Docket No. 40.]  This matter is suitable for resolution without oral argument.  Civ. L.R. 7-1(b).  For the following reasons, the motion is denied.

# I.      BACKGROUND

## A.     Allegations in the FASC

Verizon makes the following allegations in the FASC: in December 2018, Verizon filed an application with Berkeley for a use permit to build, operate, and maintain an unoccupied personal wireless service facility ("the project").  The project would consist of six antennas and remote radio units mounted on a new 50-foot pole, with associated equipment and a standby generator installed at ground level.  East Bay Municipal Utility District ("EBMUD") owns the proposed project site at 0 Euclid Avenue, which houses a 2.6 million gallon water storage tank.  The

United States District Court
Northern District of California

property is in the Single Family Residential—Hillside Overlay (R-1H) Zoning District.  FASC ¶¶ 17, 18.  Verizon proposes to disguise the 50-foot cell tower to look like a pine tree, a so-called "monopine."  According to Verizon, due to the features of the property, the ground-mounted equipment would not be visible from the surrounding streets and the monopine would be largely screened from view or blend into the backdrop of existing trees.  *Id*. at ¶ 21.

Berkeley's planning staff reviewed Verizon's application, requested photo-simulations of alternative designs, and hired an expert to conduct peer review of certain aspects of the application.  According to Verizon, the peer review confirmed that the project would comply with FCC safety limits on radio-frequency ("RF") emissions.  Verizon also submitted reports confirming that the project would comply with Berkeley's noise standards.  *Id*. at ¶¶ 23-24.  Upon completion of the application, the planning staff recommended that Berkeley's Zoning Adjustment Board ("ZAB") approve the application.  *Id*. at ¶ 25.

The ZAB reviewed the application at a public hearing on June 27, 2019 at which there were presentations from Berkeley's planning staff, Verizon, and members of the public who are opposed to the application.  Project opponents raised concerns about the environmental effects of RF emissions, aesthetics, noise, property values, the need for the project, and various procedural issues.  *Id*. at ¶¶ 27-29.  At the end of the hearing, the ZAB voted unanimously to deny the application on the basis that Verizon had not satisfied various code requirements for approval.  *Id*. at ¶ 30.

Verizon timely appealed the ZAB's denial to the Berkeley City Council ("City Council") and submitted additional evidence in support of the application.  *Id*. at ¶¶ 31-33.  The City Council held a public hearing on the appeal on July 7, 2020.  Project opponents again raised concerns about aesthetics, environmental impacts, safety risks, and procedural issues.  *Id*. at ¶¶ 36-38.  The City Council voted to deny the application.  After the hearing, Berkeley posted an annotated agenda on its website that summarized the denial.  Verizon alleges that the application should have been approved because there were no valid or lawful grounds for denial.  *Id*. at ¶¶ 39-41.

Verizon alleges that it was concerned that Berkeley or a potential intervenor "might argue that the annotated agenda" posted on Berkeley's website shortly after the denial "constituted a

1   written denial."  Therefore, it alleges, since the TCA requires that "any partly [sic] aggrieved by

2   any 'final action or failure to act' in violation of its provisions seek judicial review within 30

3   days," Verizon filed the original complaint on August 6, 2020, within 30 days of the City

4   Council's vote, "in an abundance of caution."  *Id*. at ¶ 42 (citing 47 U.S.C. § 332(c)(7)(B)(v)).

5        On September 8, 2020, Berkeley issued a written denial of its application, stating that the

6   City Council "had denied its Application based on the findings in the enclosed Resolution 69,487

7   N.S. (the 'Denial Resolution')."  FASC ¶ 43.  Verizon alleges that the Denial Resolution was not

8   made available to Verizon until September 8, 2020.  *Id*.

9        Verizon alleges three claims for relief.  First, it alleges that Berkeley failed to act on its

10  application "within a reasonable period of time" after it was filed, "in violation of 47 U.S.C. §

11  32(c)(7)(B)(ii), as interpreted by the Federal Communications Commission ('FCC') in its 'Shot

12  Clock Ruling,' *In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14005 (November 18,

13  2009) and implementing regulations."  FASC ¶ 3; *see also* ¶¶ 52-62 (claim one or the "failure to

14  act claim").  Verizon alleges that under the Shot Clock Ruling, the deadline for Berkeley to take

15  final action on the application was July 10, 2020, but that it did not act until September 8, 2020.

16  *Id*. at ¶¶ 53-61.

17       Second, Verizon alleges that Berkeley's written denial was not based on substantial

18  evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (claim two).  *Id*. at ¶¶ 64-66.

19       Third, Verizon alleges the denial was unlawful because it had the effect of prohibiting

20  Verizon from providing personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)

21  (claim three).  *Id*. at ¶¶ 68.

22       **B.    Procedural History**

23       Verizon filed its original complaint on August 6, 2020.  In September 2020, Michael Burt,

24  Angelina DeAntonis, Joann Driscoll, Allen Myers, Regina Myers, Christian L. Raisner, Oliver

25  Raisner, Lucinda Reinold, Wendy Stock, and Paul Teicholz (collectively, "Berryman Reservoir

26  Neighbors" or "BRN") moved for leave to intervene pursuant to Federal Rule of Civil Procedure

27  24(a) and 24(b).  These individuals live near the proposed cell tower.  Each participated in

28  Berkeley's review of Verizon's application before the ZAB and the City Council, and each claims

United States District Court
Northern District of California

3

that the presence of the proposed cell tower would adversely impact their interests. Verizon opposed the motion to intervene. On October 19, 2020, the court granted the motion to intervene and ordered BRN to file an answer by October 23, 2020. [Docket No. 22.] Rather than filing an answer, BRN moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint. Verizon filed a motion to amend and supplement the complaint to add the "failure to act" claim shortly thereafter, which BRN opposed. In relevant part, BRN argued that amendment was futile because the failure to act claim was barred by the statute of limitations. It also argued that the relation back doctrine could not be used to cure Verizon's untimely amendment. The court rejected this argument and granted Verizon's motion to amend and supplement the complaint. It denied the motion to dismiss the complaint as moot. *GTE Mobilnet of California Ltd. P'ship v. City of Berkeley*, No. 20-CV-05460-DMR, 2021 WL 308605, at *6, 8 (N.D. Cal. Jan. 29, 2021).

Verizon subsequently filed the FASC. BRN now moves pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss the FASC.[1]

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve

---

[1]    Pursuant to the parties' agreement and a court order, Berkeley will file the administrative record before the parties file cross motions for summary judgment. [*See* Docket No. 39 at 7.] In the motion to dismiss, BRN asks the court to take judicial notice of "[c]ertain uncontested facts" in the administrative record, but BRN did not file a copy of the administrative record or relevant portions for the court's consideration. Instead, it provided a link through which the administrative record may purportedly be retrieved. Mot. 3 n.1. The court declines to consider taking judicial notice of facts in documents that were not properly submitted to the court.

Additionally, BRN attached three exhibits to its motion, none of which were authenticated. *See* Civ. L.R. 7-5(a) (providing that "evidentiary matters must be appropriately authenticated by an affidavit or declaration."). The court will not consider the exhibits in ruling on this motion. BRN's counsel is instructed to familiarize themselves with the Local Rules regarding motion practice.

4

a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1).  The challenging party may make a facial or factual attack challenging subject matter jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039.  A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted).  Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

    **B.    Rule 12(b)(6)**

    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    2002).

2         As a general rule, a court may not consider "any material beyond the pleadings" when

3    ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).

4    However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack*

5    *v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

6    whose contents are alleged in a complaint and whose authenticity no party questions, but which

7    are not physically attached to the pleading," without converting a motion to dismiss under Rule

8    12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

9    1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept

10   as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr*.

11   *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

12   **III.    DISCUSSION**

13        **A.  Subject Matter Jurisdiction**

14             **1.    Ripeness**

15        BRN argues under Rule 12(b)(1) that the court lacks subject matter jurisdiction over the

16   FASC because it was not filed during the 30-day window set forth in the TCA, 47 U.S.C. §

17   332(c)(7)(B)(v), and thus is not ripe.  Mot. 7.

18        The TCA provides in relevant part that "[a]ny decision by a State or local government or

19   instrumentality thereof to deny a request to place, construct, or modify personal wireless service

20   facilities shall be in writing and supported by substantial evidence contained in a written record."

21   47 U.S.C. § 332(c)(7)(B)(iii).  "[T]he denial itself needs only to be issued (or the application

22   otherwise acted upon) 'within a reasonable period of time.'"  *T-Mobile S., LLC v. City of Roswell,*

23   *Ga.*, 574 U.S. 293, 304 (2015) (quoting 47 U.S.C. § 332(c)(7)(B)(ii)).  "Any person adversely

24   affected by any final action or failure to act by a State or local government or any instrumentality

25   thereof . . . may, within 30 days after such action or failure to act, commence an action in any

26   court of competent jurisdiction."  47 U.S.C. § 332(c)(7)(B)(v).  This "30-day commencement-of-

27   suit clock" begins to run upon the "issuance of the written notice of denial."  *City of Roswell*, 574

28   U.S. at 305, 305 n.4 (2015).

United States District Court
Northern District of California

6

1    Here, the Berkeley City Council denied the application at a public hearing on July 7, 2020.

2  On July 9, 2020, Berkeley posted an annotated agenda on its website summarizing the City

3  Council's action.  FASC ¶¶ 39, 40.  Verizon filed the complaint on August 6, 2020 because it

4  "was concerned that [Berkeley] or a potential intervenor might argue that the annotated agenda . . .

5  constituted a written denial."  *Id*. at ¶ 42.  The FASC also alleges that Berkeley did not issue a

6  written denial of the application until September 8, 2020, which was "more than a month after this

7  suit was filed."  FASC ¶ 43.  Based on these allegations, BRN argues, "Verizon's action was not

8  statutorily or *constitutionally* ripe for adjudication when filed [the original complaint] and

9  therefore cannot serve as the jurisdictional basis for the [FASC], which must be dismissed for lack

10  of subject matter jurisdiction" under Rule 12(b)(1).  Mot. 13 (emphasis in original); *see United

11  States v. Antelope*, 395 F.3d 1128, 1132 (9th Cir. 2005) ("The constitutional component of

12  ripeness is a jurisdictional prerequisite.").

13    BRN also argues that the 30-day commencement of suit requirement in section

14  332(c)(7)(B)(v) is jurisdictional and thus not subject to any equitable exceptions or the relation

15  back doctrine set forth in Rule 15(c).  Mot. 7, 14.

16    BRN's ripeness argument lacks merit.  As the court previously found in granting Verizon

17  leave to file the FASC, the facts of *T Mobile Northeast LLC v. City of Wilmington, Delaware*, 913

18  F.3d 311 (3d Cir. 2019), "are on all fours with the facts of this case."  *GTE Mobilnet*, 2021 WL

19  308605, at *6.  In *T Mobile*, the plaintiff, a wireless telecommunications service provider, applied

20  to a zoning board for permission to erect an antenna in Wilmington, Delaware.  913 F.3d at 316.

21  The zoning board orally denied the application at an October 2016 hearing but did not put the

22  decision in writing on the date of the hearing "or anytime soon thereafter."  *Id.*  The plaintiff filed

23  suit against Wilmington in district court within 30 days of the oral decision, challenging the denial

24  under the TCA.  The zoning board did not issue a written decision on the application until

25  December 2016, after Wilmington filed its answer to the complaint.  *Id.* at 316, 322.

26    The parties subsequently filed cross motions for summary judgment.  In its motion,

27  Wilmington moved in the alternative to "dismiss the complaint as unripe because it was filed

28  prematurely, i.e., before the written decision had been issued."  *Id*. at 317.  The plaintiff then

moved for leave to amend or supplement the initial complaint to include the issuance of the written decision on the application.  The district court granted the motion to supplement and Wilmington moved to dismiss the supplemental complaint as untimely.  The court ultimately granted Wilmington's cross motion for summary judgment, finding that the initial complaint "was irreparably unripe because both the TCA and Delaware law require the [zoning board] to issue a written decision before the agency's action could be considered final."  Therefore, the plaintiff had filed its complaint too soon.  *Id.*  The district court also held that the supplemental complaint "could not fix the ripeness problem because it was filed past the 30-day window for seeking review of the [zoning board's] final action."  *Id.*  It did not reach the question of whether the plaintiff's supplemental complaint was entitled to the benefit of Rule 15(c)'s relation back doctrine.  *Id.*

On appeal, the Third Circuit held that the zoning board's oral decision was not a "final action" within the meaning of the TCA, and that "only a written decision can serve as a locality's final action when denying an application" for purposes of starting the 30-day time limit for filing suit.  *Id.* at 318-22.  Therefore, it concluded that the plaintiff's original claim for relief, which challenged the October 2016 oral decision, was not ripe for review when filed.  *Id.* at 322.  The court further found that the supplemental complaint, which was filed more than 30 days after the zoning board issued its written decision, was untimely under the TCA.  *Id.* at 323.  Accordingly, it concluded that the district court "only had jurisdiction if [the plaintiff's] supplemental complaint cured the ripeness flaw in its original complaint by relating back to the original filing date."  *Id.*

The Third Circuit first considered whether the 30-day time limit was nonjurisdictional, in which case "relation back is possible and allows a supplemental complaint to cure a defective premature filing."  *Id.*  The court answered this question in the affirmative, finding that "the text and context of [the TCA], and historical treatment of timing requirements in similar statutes, do not reveal a clear intent from Congress to make the review provision's timing requirement jurisdictional[.]"  *Id.* at 324-26; *see Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (when "determining whether to classify a statutory limitation as jurisdictional . . . [w]e inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement,

United States District Court
Northern District of California

we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'" (citations omitted)).  The Third Circuit went on to hold that "an untimely supplemental complaint can, by relating back, cure an initial complaint that was unripe."  913 F.3d at 326.  It observed that "Rule 15 does not indicate whether or under what circumstances a supplemental pleading can relate back to the date of the original pleading to avoid the effect of a time limit."  However, "case law and secondary sources have long instructed that once a supplemental complaint is granted, it is treated like an amended complaint for purposes of relation back."  *Id*. at 327.  Therefore, it concluded, "even though Rule 15(d) is in a separate statutory provision from Rule 15(c), a supplemental complaint can relate back" if "it meets the basic test for relation back prescribed by Rule 15(c)"; that is, if there is a "common core of operative facts in the two pleadings."  *Id*. at 327-28 (quotation marks and citation omitted).  The court found that the test was met, since "[b]oth complaints rely on the same core facts.  The written denial was a certification and restatement of the earlier oral denial."  *Id*. at 328.  The court emphasized both the "clear preference embodied in Rule 15 . . . for merits-based decision making," as well as the fact that "Wilmington had notice of everything in the supplemental complaint."  *Id*. at 328.  Accordingly, it concluded, "because T Mobile's motion to supplement the complaint was properly granted, that supplemental complaint relates back and is ripe."  *Id*. at 326.

Not only are the facts of *T-Mobile* similar to the facts of this case, "[t]he Third Circuit's approach in *T Mobile* is consistent with Ninth Circuit law."  *GTE Mobilnet*, 2021 WL 308605, at *6 (discussing *Security Insurance Co. v. United States ex rel. Haydis*, 338 F.2d 444, 445 (9th Cir. 1964)).  For example, in *Security Insurance*, the plaintiff, who had supplied materials to a contractor, filed his complaint against the contractor prematurely; under the relevant statute, he was required to wait 90 days after the last day materials or labor were supplied to file suit.  The defendant moved to dismiss the complaint on the day set for trial, arguing that the case should be dismissed because the complaint was premature.  The plaintiff then filed a supplemental complaint, and the defendant argued that the case should be dismissed anyway, because (1) the original complaint was premature; (2) the supplemental pleading was filed after the one-year statute of limitations had expired and should not relate back; and (3) even if the allegations in the

9

United States District Court
Northern District of California

supplemental pleading did relate back, "they must relate back to the time when the action was filed and at that time the plaintiff had no claim for relief." 338 F.2d at 446.  The Ninth Circuit refused to dismiss the case, holding that the supplemental pleading could relate back to the original complaint under Rule 15(c) even though Rule 15(d) does not mention relation back. It also held that it "was not required to apply the doctrine of relation back so literally as to carry it to a time within the ninety-day period [specified in the statute], so as to prevent the maintenance of the action in the first place." *Id.* at 449.

This court previously held that "under the persuasive reasoning of *T Mobile*, 'a pleading filed according to Rule 15(d) can relate back' if it meets the test for relation back under Rule 15(c)" and concluded that "Verizon's proposed [FASC] relates back" under that test.  *Id.* (citing *T Mobile*, 913 F.3d at 327, and *Security Ins*., 338 F.2d at 449).  Therefore, the court rejected BRN's argument that the failure to act claim was futile because it was barred by the statute of limitations. *GTE Mobilnet*, 2021 WL 308605, at *6.[2]

BRN now argues that the Third Circuit erred in holding in *T Mobile* that the TCA's 30-day time limit is not jurisdictional but offers no persuasive authority or argument that the court should decline to follow its reasoning on that point.  *See* Mot. 15 n.9.  The court concludes that the 30-day time limit in section 332(c)(7)(B)(v) is not jurisdictional.  Therefore, consistent with the court's order granting Verizon leave to file the FASC, the doctrine of relation back applies to Verizon's FASC.  As a result, the FASC cured any ripeness issue with the original complaint and the court has subject matter jurisdiction over the FASC.  *See T Mobile*, 913 F.3d at 328 ("the only question remaining is whether a complaint that relates back can cure an untimely initial complaint, and the answer is yes").

---

[2] The court noted that BRN also argued that the failure to act claim was not ripe, since it was filed before Berkeley's issuance of a written decision on the application, but declined to consider it as it was based on arguments in BRN's motion to dismiss the original complaint, which was not before the court.  *GTE Mobilnet*, 2021 WL 308605, at *4 n.2.  The court ultimately found that it did not need to "resolve the question of ripeness in determining the propriety of Verizon's proposed failure to act claim under Rule 15(d)" because the proposed FASC "relate[d] back" to the original complaint.  *Id*. at *6.

2.      **Standing**

BRN argues that the court lacks subject matter jurisdiction over this case because Verizon lacks standing to bring this action.  Its argument rests on language in a November 8, 2018 "Telecommunications Lease" between EBMUD and Verizon, as well as purported statements by "the Director of EBMUD."  The court cannot consider these materials because they have not been authenticated.  *See* Mot. 22-24 (citing Exs. 1 and 3 to the Motion to Dismiss).  The motion is denied on that basis.  Even if BRN properly had submitted the materials for consideration under Rule 12(b)(1), the parties' arguments raise factual issues that are not conducive to determination on a pleadings motion.  In any event, BRN does not explain how a provision in the lease purportedly giving EBMUD final authority to reject the project defeats Verizon's Article III standing to challenge Berkeley's decision on its application under the TCA.

Accordingly, BRN's motion to dismiss based on the issue of standing is denied.

**B.      Timeliness of the FASC**

BRN argues that even if the 30-day commencement of suit provision in section 332(c)(7)(B)(v) is not jurisdictional, the FASC should be dismissed as untimely under Rule 12(b)(6) since the running of the statute of limitations is apparent on the face of the FASC.  Mot. 16; *see Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations . . . when the running of the statute is apparent on the face of the complaint." (quotation marks and citation omitted)).  It notes that the FASC alleges that Verizon and Berkeley entered into a series of tolling agreements extending the Shot Clock deadline, the last of which extended the deadline through July 10, 2020.  FASC ¶ 60.  Therefore, BRN argues, Verizon had only 30 days from July 10, 2020 to file its "failure to act" claim, but did not file the FASC until February 1, 2021, well after that deadline.  Mot. 13.

BRN seeks to re-litigate an issue the court already decided in granting Verizon leave to file the FASC.  *See GTE Mobilnet*, 2021 WL 308605, at *6 ("the court rejects BRN's futility argument based on the statute of limitations.").  Its position is contrary to the Ninth Circuit's holding in *Security Insurance*, where the Ninth Circuit permitted a supplemental pleading filed after the

expiration of the applicable statute of limitations to relate back to the original complaint.  338 F.2d at 449.  BRN argues that the Ninth Circuit's holding in *Security Insurance* should be limited to the facts of that case.  Mot. 17-20.  The court declines to so hold.

## C.    Claim for Costs and Disbursements

Finally, BRN moves to dismiss the FASC's request "[f]or any order awarding Verizon Wireless the costs and disbursements incurred in connection with this action pursuant to 28 U.S.C. Section 1920[.]"  FASC, Prayer for Relief ¶ 6.  It cites *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 122-23 (2005), in which the Supreme Court held that the remedies available under the TCA do not include attorneys' fees and costs.  Mot. 25.  BRN's argument appears to be that Verizon's request for "costs and disbursements incurred in connection with this action" amounts to an improper request for attorneys' fees and costs under the TCA.  BRN's argument ignores the portion of the request citing 28 U.S.C. § 1920, which lists the six categories of costs that may be taxed, none of which include attorneys' fees.  In other words, the FASC does not improperly request relief beyond that authorized by 28 U.S.C. § 1920.  BRN's motion to dismiss this portion of the prayer for relief is denied.

## IV.    CONCLUSION

For the foregoing reasons, BRN's motion to dismiss the FASC is denied.  Within 14 days of the date of this order, Berkeley and BRN shall file a response to the FASC and Berkeley shall file the administrative record.  Verizon's motion for summary judgment and/or the parties' cross motions for summary judgment shall be governed by the schedule set forth in the court's order at Docket No. 39.

**IT IS SO ORDERED.**

Dated: September 28, 2021



_____
Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California